Joseph DeBOLD and Margaret DeBold, his wife, Plaintiffs-Appellants,

v.

John LESLIE and Katherine Leslie, his wife, Defendants-Respondents.

No. 50345.

Supreme Court of Missouri,

Division No. 1.

July 13, 1964.

Motion for Rehearing or to Transfer to Court En Banc Denied Sept. 14, 1964.

Page header**817**817

Attorney blockCharles M. Shaw, Clayton, for respondents.

William R. Hirsch, Clayton, for appellants.

WELBORN, Commissioner.

█ This is a dispute over a driveway. The plaintiffs-appellants sought to prevent the defendants-respondents from barricading a driveway and to quiet title in plaintiffs to a tract of ground on which a portion of the drive was located. The trial court found for the defendants, without any findings of fact or conclusions of law. After an unsuccessful motion for new trial, plaintiffs appealed to this court. Jurisdiction of the appeal is in this court because the petition sought a judgment which would determine title to real estate.

The site of the land in dispute is in St. Louis County, at the corner of Lackland and Schuetz Roads. On August 30, 1949, plaintiffs acquired a tract of some 1.105 acres at that location. Their lot was part of a tract of farm land, which, insofar as was shown, was never platted. At the

time of the plaintiffs' purchase, there was a new residence on the lot. A chat driveway led from Schuetz Road, at its intersection with Lackland, to the house. According to plaintiffs, they did not have a survey of the lot made at the time of their purchase. They testified that the real estate agent through whom they purchased the lot showed them its boundaries and told them that their driveway was within the boundaries of the lot which they purchased. There was introduced into evidence a survey of the lot, made August 8, 1949, which showed that the northeast corner of the tract purchased by plaintiffs was at the intersection of Lackland and Schuetz Roads, and that plaintiffs' lot actually did not front on Schuetz Road. The plat showed a rock drive leading to the house which was, for a greater portion of its length, within the boundaries of plaintiffs' lot. However, near its terminus at the northeast corner of the lot, the drive curved slightly to the east to reach Schuetz Road. The survey showed that, at such point, the drive was beyond the boundaries of the plaintiffs' lot. The plaintiffs denied having seen the 1949 survey before the present dispute arose in 1962.

In 1950, the defendants purchased a tract of land on Schuetz Road to the south of the plaintiffs' lot. It was a part of the same tract as plaintiffs' lot, but did not adjoin plaintiffs' lot, there being an intervening tract which contained the above-mentioned portion of the driveway which was beyond the boundaries of plaintiffs' lot. The defendants erected a residence on their lot and lived there until the time of the trial.

The plaintiffs lived in the house on the lot which they purchased continuously thereafter and used the driveway at all times until their use was interrupted in 1962. During this time, plaintiffs put new rock on the drive on three occasions and in the spring of 1962, they put an asphalt surface on the drive.

At the time of plaintiffs' purchase of their lot, the house did not have an address by street and number. When address numbers were assigned by the post office, the number assigned to plaintiffs' residence was 1945 Schuetz Road. They erected a mail box bearing that number. For three years prior to the trial, the mail box bearing the numbers "1945" had been at the south edge of the driveway at its intersection with Schuetz Road.

In 1956, the tract lying between plaintiffs' and defendants' lots was offered for sale. Apparently there was some discussion between the parties as to whether one or the other of them should purchase the tract. Plaintiffs were not interested in doing so, and defendants purchased. The testimony as to what transpired at that time with respect to the driveway was in direct conflict.

According to the plaintiffs, the Leslies said nothing to them about the driveway at the time of the 1956 purchase or thereafter until September or October, 1962.

The defendants testified that, prior to their purchase of the intervening tract, a survey was made which showed that a portion of the driveway used by plaintiffs was located thereon. The Leslies testified that they took the survey plat and went on the property with the DeBolds and showed them that, according to the survey, their driveway at Schuetz Road was located on the intervening tract. According to the Leslies, the DeBolds did not agree with the survey and the Leslies said that they would not purchase the tract until there was agreement on the boundary between the two tracts. According to Mrs. Leslie, Mrs. DeBold telephoned a few days later and told her that "Joe had conceded that the surveyor was right and that we could go ahead and sign the papers."

The Leslies testified that they thereafter purchased the tract. Mr. Leslie testified that, shortly after their purchase of the tract, he and his wife were visiting the DeBolds and he told Mr. DeBold that "they could use * * * the drive, because we had no immediate plans for it." Leslie

was unable to recall DeBold's reply, if any. Mrs. Leslie testified that her husband told DeBold, in her presence, that "he could use the driveway until the time came that we needed it for other purposes or as long as we didn't use it otherwise." She could not recall what, if any, reply DeBold made.

There was no evidence of any further discussion of the drive until 1962. Sometime prior to September, 1962, the Leslies sought to obtain a change in zoning from single family to business of the tract which they purchased in 1956. The DeBolds appeared at a meeting of the St. Louis County Planning Commission which heard the application of the Leslies and spoke in opposition to it. The Commission denied the requested change.

After the hearing, Leslie told DeBold, according to the latter, that he had "caused him to lose out on his change-over on property and I would have to move my driveway, and I said I wouldn't do it." According to Leslie, in September, 1962, he told DeBold that he was going to sell his property and that DeBold would have to move his driveway and DeBold agreed to do so. DeBold did have a survey made, which again showed the location of a portion of the drive on the Leslie lot. Apparently DeBold took no steps to alter the location of the drive.

On Saturday afternoon, December 1, 1962, the DeBolds returned to their house and found a fence in the driveway along the surveyed line between the two lots. The fence was an extension of one that ran along the entire boundary between the two lots. Mrs. DeBold testified that she was angered at the presence of the fence and removed it. When she did so, Mrs. Leslie came on the scene with what Mrs. DeBold described as a "long gun" and ordered her to put the fence back. According to Mrs. Leslie, the "long gun" was a BB gun. After a few "stiff words," Mrs. DeBold walked away, without replacing the fence. The next day, a heavier fence, with concrete posts, was in place in the driveway, pre-venting plaintiffs from making use of the drive.

In their petition in this case, plaintiffs claimed that, since the acquisition of their property in 1949, they had continuously used a strip of ground described as "a triangular area about 30 x 78 feet at the base, and at the entrance of said driveway." The petition alleged that plaintiffs' use was open, notorious and under a claim of right and title.

The petition sought an injunction against defendants' blocking of the driveway, actual damages in the sum of $2,235, punitive damages of $5,000, and a decree quieting title in the triangular 30' x 78' strip to plaintiffs.

Defendants denied that plaintiffs were the owners of the disputed tract and alleged that the plaintiffs' use of the property was permissive in origin and character.

On this appeal, the plaintiffs urge that the trial court should have found that their use of the drive for a period in excess of ten years was of such nature as to vest title therein in them by prescription. They further contend that the evidence relied upon by defendants to show that plaintiffs' use was permissive was insufficient to establish such fact. The respondents seek to support the judgment of the trial court on the basis of a permissive use.

We do not have the benefit of express findings of fact by the trial court. However, by its judgment and decree, the court found the issues for defendants and against the plaintiffs. Inasmuch as the plaintiffs' evidence considered alone would have warranted a finding in their favor, we must conclude that the trial court accepted as credible the testimony of defendants regarding the events which transpired in 1956 when the intervening lot was purchased. On the basis of such evidence, the trial court presumably found that at that time the plaintiffs acknowledged that a portion of the driveway was beyond the boundary of their lot and that they used it thereafter by permission of the defendants granted

at that time. On the basis of such findings, there could be in the plaintiffs neither title by adverse possession to (Dalton v. Willis, 360 Mo. 329, 228 S.W.2d 709, 711(3); 2 C.J.S. Adverse Possession § 149, page 711), nor easement by prescription over (28 C.J.S. Easements § 14d, page 655), the disputed area.

■ This case was tried in the court below as an equity matter. This court on review makes its own findings of fact and conclusions of law. Lukas v. Hays, Mo.Sup., 283 S.W.2d 561, 565(3); Spaeth v. Larkin, Mo.Sup., 325 S.W.2d 767, 771(3). However, resolution of the conflict in the oral testimony of the parties in this case must, in the absence of a substantial basis for a contrary conclusion, depend largely on the trial court's superior opportunity to observe the witnesses as they testified. Townsley v. Thielecke, Mo.Sup., 349 S.W.2d 902, 906(2); Spaeth v. Larkin, supra. We are unable, on the record before us, to say that the trial court erroneously accepted the defendants' version of the 1956 evidence and that he should have accepted the plaintiffs'. The only witnesses who testified to the essential issues were the parties themselves. Therefore, each of the witnesses was interested in the outcome of the litigation and each testified in behalf of his or her respective interest. We find nothing in the documentary evidence or the circumstances of the case which would cause us to reject the trial court's determination of the issue of credibility. Leimkuehler v. Shoemaker, Mo.Sup., 329 S.W.2d 726, 731 (5, 6).

■ Accepting, therefore, the defendants' version of the 1956 events, we must conclude that the trial court properly found that the plaintiffs acquired no right by either adverse possession or prescription in the area in dispute. The testimony was adequate to show that, at that time, the plaintiffs acknowledged that the portion of the driveway here in dispute was on the adjoining lot and not on their lot. Further, it showed that, upon the defendants' acquisi-

tion of the lot, permission was given plaintiffs to use the driveway. Plaintiffs assert that the evidence in this regard was not cogent and convincing and that defendants failed to carry their burden of coming forward with evidence to rebut the presumption that plaintiffs' use, having continued for more than ten years, was adverse and not permissive. See Dalton v. Johnson, Mo. Sup., 320 S.W.2d 569, 573(6). However, we find the evidence sufficient to meet the defendants' burden. The evidence must be viewed in the light of the parties' situation at that time. They were apparently friendly, co-operative neighbors then. They undoubtedly did not foresee the difficulties which would arise between the two families and did not purport to express their legal relationship in terms which a legal draftsman would have employed. Nevertheless, we find the testimony regarding the defendants' statements sufficient to show that, insofar as the parties to this litigation are concerned, the plaintiffs' use of the portion of the driveway which was on the defendants' lot was by permission of the defendants. On such basis, the trial court properly found the issues for the defendants.

■ Although in their petition plaintiffs also alleged matters which might be taken to have asserted a claim of right-of-way by necessity, on their appeal they have not urged this claim and are deemed to have abandoned it. In re Off-Street Parking Facilities, Kansas City, Mo.Sup., 287 S.W. 2d 866, 867(1); Heuer v. Ulmer, Mo.Sup., 273 S.W.2d 169, 170(1), (2).

■ Plaintiffs on the appeal do assert that they should be granted relief on the basis of estoppel in pais based upon defendants' failure to object when, in 1962, the plaintiffs made improvements of a permanent nature on the driveway, including that portion here in question. However, again, accepting the defendants' version of the 1956 events, plaintiffs must be charged with having improved the drive with knowledge that a portion of it was not on their lot. In such circumstances, the failure of defend-

ants to object at the time to the improvement would not operate as an estoppel. Mills v. Taylor, Mo.Sup., 270 S.W.2d 724, 729; Wilkinson v. Lieberman, 327 Mo. 420, 37 S.W.2d 533, 536(4, 5).

The judgment of the trial court is affirmed.

HOUSER, C., concurs.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.