**Carla E. KIESLING, Respondent,**

v.

**Norma ANDREWS and Leonard B. Zordel, Appellants.**

**No. WD 68991.**

Missouri Court of Appeals, Western District.

Nov. 4, 2008.

Connie J. Clark, Osage Beach, MO, for appellant.

Marjorie M. Lewis, Columbia, MO, for respondent.

PAUL M. SPINDEN, Judge.

Norma Andrews[1] and Leonard Zordel appeal the circuit court's judgment to deny Zordel's counterclaim in which he sought to quiet title to farm land in Miller County. Zordel's grandmother, Iris Barnes, had become part owner of the farm along with Barnes' two daughters, Carla Kiesling and Andrews, when Jay and Dovie Barnes executed a general warranty deed conveying the farm to the women during 1965. During 1991, Barnes granted Zordel permission to live on the farm in exchange for his making needed improvements to it. During 1997, Barnes executed a general warranty deed conveying her interest in the farm to her daughters, but Zordel continued to live on the farm.

Barnes died during 2003, but Zordel continued to live on the farm. In 2005, Kiesling filed her first amended petition to partition the farm. She alleged that she and Andrews each owned a one-half interest and requested that the land either be partitioned or be sold if it could not be divided fairly. Kiesling named Andrews as a defendant and Zordel as a third party defendant. Zordel filed a counterclaim in which he alleged that he was the farm's true owner because Barnes gave him the land as a parol gift. He averred alternatively that he had gained possession of the land under the doctrine of adverse possession. The circuit court held a bench trial on May 30, 2007, in which it denied Zordel's counterclaim and found that Kiesling and Andrews own the farm as tenants in common.

In their first point, Andrews and Zordel complain that the circuit court erred in denying Zordel's counterclaim. They assert that they presented clear and convincing evidence that Barnes gave Zordel the farm as a parol gift because they established that, on the basis of Barnes's promise that she was giving him the farm, Zordel took possession of it in 1991 and made substantial improvements to it.

In a court-tried case, we must affirm the circuit court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *O'Dell v. Mefford*, 211 S.W.3d 136, 138 (Mo.App.2007). This court's primary concern is whether or not the circuit court's judgment is correct. *Id.* We will, therefore, affirm the judgment if it is supported by any reasonable theory, even if different

---

1. The parties do not explain why Andrews was a party to this appeal of the circuit court's denial of Zordel's counterclaim.

from that expressed by the circuit court. *Id.*

In reviewing the circuit court's judgment, we view the evidence, and all reasonable inferences, in the light most favorable to its judgment, and we disregard all contrary evidence and inferences. *Id.* at 141. The circuit court was the trier of fact, and we defer to its factual findings because it had the opportunity to judge the credibility of the witnesses. *Id.*

■ As a preliminary matter, the parties dispute whether Zordel can claim a one-third interest in the farm or the entire farm. Kiesling claims that the 1965 deed establishes that, at the time of the alleged gift in 1991, Barnes owned only a one-third interest in the farm and, therefore, could have given Zordel only her one-third interest.

Andrews and Zordel concede that the 1965 deed conveyed title to the land to Barnes, Andrews, and Kiesling as tenants in common and, therefore, the deed granted Barnes only a one-third interest. They assert that, although all three names appear on the deed, everyone understood that Andrews and Kiesling were on the deed for "estate planning purposes" only and that Barnes maintained full ownership of the farm.

■ In making this argument, Andrews and Zordel ignore a well-established rule that a deed must be interpreted by its language without the aid of extrinsic evidence unless it is ambiguous. *Emerald Pointe, L.L.C. v. Jonak,* 202 S.W.3d 652, 659 (Mo.App.2006). Andrews and Zordel do not claim that the 1965 deed was ambiguous, nor do we discern any ambiguity. Hence, from the deed, we conclude that Barnes had a one-third interest in the farm and that Zordel, therefore, could claim only a one-third interest.

Andrews and Zordel concede that Barnes never issued him a deed for her interest in the land. His claim, therefore, normally would be barred by the statute of frauds provision found in Section 432.010, RSMo 2000,[2] which requires that contracts for the conveyances of land be reduced to writing. *See also O'Dell,* 211 S.W.3d at 139.

■ Andrews and Zordel maintain, however, that this case fits within the parol gift exception to the statute of frauds. Under this exception, courts will not enforce the statute of frauds when the donee of a gift of land, induced by a promise of the gift, takes exclusive possession of the land and makes valuable and permanent improvements to it. *Id.* The evidence must establish that the donor intended to pass title to the donee and to relinquish all control of the property. *Id.* The donee's burden is to presenting clear and convincing evidence that the donor intended to make a parol gift. *Id.* Hence, in addition to establishing that the donor intended to pass the property's title to the donee and

---

**2.** Section 432.010 says, "No action shall be brought to charge any executor or administrator, upon any special promise to answer for any debt or damages out of his own estate, or to charge any person upon any special promise to answer for the debt, default or miscarriage of another person, or to charge any person upon any agreement made in consideration of marriage, or upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, or any lease thereof, for a longer time than one year, or upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract."

to relinquish all rights to it, the done must establish that he or she, based on the promise of the gift, took possession of the property and made valuable and permanent improvements to it. If the donee proves these elements, the courts will hold that allowing the donor, or a third party, to deny the gift on the basis of the statute of frauds is inequitable. *Id.* When the gift is not asserted until after the donor's death, however, it is viewed with more suspicion. *Id.*

In denying this claim, the circuit court said:

> The Court finds that [Barnes's] purported statements over the years [were] not clear and convincing evidence of an oral gift of the Farm to Leonard. It is clear from [Zordel's] failure to disclose any ownership interest in the Farm to [Kiesling] or his loan officer, his failure to disclose [a] purported interest in various documents, and particularly in his Bankruptcy Petition, and from his statement in his 1997 financial statement that he was leasing the Farm, that he did not believe that he had an ownership interest in the Farm. [Barnes's] execution of the 1997 deed to [Kiesling] and [Andrew] also shows the absence of a gift.

This conclusion was supported by clear and convincing evidence. The evidence established that Barnes's, Kiesling's, and Andrew's names were on the property's deed during 1991. In 1997, Barnes executed a warranty deed for the farm conveying her interest to Kiesling and Andrews. From this evidence, the circuit court had sufficient reason to find that, by executing a deed in 1997, Barnes did not give the property to Zordel or relinquish control over it in 1991.

Numerous witnesses testified that Barnes had told them that she wanted Andrews and Kiesling to have the farm when she died. These witnesses were Misty Scalise, Kiesling's daughter; David Scalise, Kiesling's son-in-law; Frank Andrews, Kiesling's son; and Robert Barnes, Kiesling's and Andrew's brother. The circuit court was free to believe their testimony. *O'Dell,* 211 S.W.3d at 140–41. If believed, this testimony provided a firm basis for the circuit court's conclusion that Barnes never intended to give an interest in the farm to Zordel.

Substantial evidence also established that Zordel did not claim ownership of the farm officially. For example, on numerous credit applications from 1991 to 1997, he declared that he did not own any real estate. On a 1997 application, he reported that he rented the farm from Barnes. When Zordel filed for bankruptcy in 1997, he did not list the farm as his property. His tax returns established that, except for 2003 and 2004, he never reported paying taxes on the farm. This evidence provided the circuit court a reasonable basis for finding that, for the relevant time period (1991–2005), Zordel did not hold himself out as the farm's owner. Because Zordel did not hold himself out as owner, the circuit court had a reasonable basis for concluding that Zordel did not believe that Barnes truly had given him the property as a gift. Substantial evidence, therefore, supported the circuit court's conclusion that Barnes did not give the farm to Zordel as a gift.

Andrews and Zordel do not deny this evidence. Instead, they point to contrary evidence. For example, they point out that Andrews testified that she had understood that Barnes gave the property to Zordel as a gift during 1991. Andrews and Zordel are correct that the circuit court heard contrary evidence. In making this argument, however, they seem to misunderstand our standard of review. We must view the evidence and its reasonable inferences in the light most favorable to

the circuit court's judgment and ignore all contrary evidence and inferences. *Id.* at 141. Hence, that the record contained contrary evidence is irrelevant, and because substantial evidence supports the circuit court's judgment, we must affirm the judgment.

■ In their second point, Andrews and Zordel claim as an alternative argument that the circuit court erred in denying his counterclaim for a quiet title to the farm because the record established that he met the requirements for adverse possession.

■ Section 516.010, RSMo 2000, says:

No action for the recovery of any lands, tenements or hereditaments, or for the recovery of the possession thereof, shall be commenced, had or maintained by any person … unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action.

Under this statute, to acquire ownership of property by adverse possession, the claimant must establish by a preponderance of the evidence that his possession was (1) hostile, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the ten-year period prior to the commencement of the action. *Thomason Investments, L.L.C. v. Call*, 229 S.W.3d 297, 300 (Mo.App.2007).

In denying his claim for adverse possession, the circuit court found:

[Zordel] seeks to establish the hostility element of adverse possession by virtue of an oral gift. . . .

As set forth earlier, there is [insufficient] evidence of an oral gift. Even if [Zordel] could establish a statement in 1991 allegedly giving him the land, such that the hostility element is satisfied, he cannot satisfy the other element of adverse possession as he did not make Carla [Kiesling] aware of his claim of ownership and where his possession merely comported with his permissive right to possession and duty to maintain the Farm.

The circuit court's finding that Zordel's possession of the farm was not hostile was correct. To establish that his possession was hostile, Zordel's burden was to show that his possession was "'antagonistic to the claims of all others[;] *i.e.*, the claimant must occupy the land with the intent to possess it as his own and not in subservience to a recognized, superior claim of another.'" *Underwood v. Hash*, 67 S.W.3d 770, 775 (Mo.App.2002) (quoting *Weaver v. Helm*, 941 S.W.2d 801, 805 (Mo. App.1997)). He, however, need not show animosity because his intent to possess, not his intent to take the land from the true owner, governed. *Id.* Hence, the hostile element was satisfied even if Zordel mistakenly believed that he had title and occupied the land as his own. *Id.* Zordel's possession would not be hostile, however, if the evidence established that he had the true owner's permission to use the land. *Id.* at 778.

Kiesling testified that Barnes told her that she let Zordel live on the farm in exchange for his paying for its upkeep and his making needed improvements. Kiesling also testified that she had permitted Zordel to live on the farm in exchange for his making needed improvements. The circuit court was free to believe Kiesling's testimony. *O'Dell*, 211 S.W.3d at 140–41. If believed, this testimony provided the circuit court a sufficient basis for finding that Zordel's possession of the farm was permissive and not hostile.

Furthermore, as we noted *supra*, Zordel never claimed the farm as his property or paid taxes on it. From this evidence, the

circuit court had a reasonable basis for concluding that Zordel never held himself out as the farm's true owner and that he did not do so because he knew that his rights to the farm were subservient to Barnes's and Kiesling's rights. This would establish that Zordel's claim was not hostile.

Again, Andrews and Zordel do not deny this testimony but point to contrary evidence. For the same reason set out *supra*, this evidence was irrelevant. Because substantial evidence supported the circuit court's judgment, we must affirm the judgment.

HAROLD L. LOWENSTEIN, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.